IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FIDEL MORALES MENDEZ | ) | No. C 08-04685 JW (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY AS UNNECESSARY |
| vs. | ) ) ) ) | |
| BEN CURRY, Warden, | ) ) | |
| Respondent. | ) ) ) | |

Petitioner, a California prisoner proceeding pro se, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2007 decision of the California Board of Parole Hearings ("Board") finding petitioner unsuitable for parole. The Court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer, and petitioner filed a traverse.

**PROCEDURAL BACKGROUND**

In May 1992, petitioner was convicted of second degree murder with the use of a firearm and assault with a deadly weapon. Petitioner was sentenced to eighteen years-to-life. On August 29, 2007, petitioner was denied parole by the Board for a second time. Petitioner filed a habeas petition in the state superior court, which denied the petition in a

1 reasoned opinion on January 15, 2008.  Thereafter, petitioner filed a petition in the
2 California Court of Appeal, which issued a summary denial on February 29, 2008.
3 Petitioner filed a petition for review with the California Supreme Court, which summarily
4 denied review on August 27, 2008.  Petitioner filed the instant federal petition on October
5 9, 2008.

## FACTUAL BACKGROUND

A. <u>The Commitment Offense</u>

The following summary of facts is taken from the opinion of the California Court of Appeal on direct appeal, filed on October 28, 1993, and read into the transcript of the Board hearing:

> The evidence established that between 7:00 and 8:00 p.m. on March 5, 1990, Santa Maria police officers Larry Davis, common spelling, and Paul Flores, F-L-O-R-E-S, arrived at the Santa Maria apartment of Salvador Garcia, G-A-R-C-I-A, in response to a call regarding a disturbance.  The officers found Manuel Castro, C-A-S-T-R-O, who appeared 'terrified.'  Castro had bruises and welts and was bleeding from the head.  In the apartment the officers found Garcia lying on the floor, bleeding.  Garcia subsequently died from two gunshot wounds to the head.  He had also suffered an injury to his arm caused by 'some very blunt object with a pretty rigid right angle to it.'  The rifle used in the shooting was not found.
>
> Based on statements Garcia made to a paramedic, Flores arrested Castro and took him to a hospital for treatment of his wounds.  Flores advised Castro of his constitutional rights, which Castro waived.  Castro told the officer that he had been visiting Garcia when Jose Luis Mendez, Salvador Enriquez, E-N-R-I-Q-U-E-Z, and [petitioner] entered.  Enriquez attacked Castro while the other two attacked Garcia.  Castro stated that [petitioner] brought the rifle and that Mendez picked it up when [petitioner] dropped it as he fought with Garcia.  Enriquez said they should shoot Castro also, but the other two assailants had already left.  Enriquez then struck Castro with a pipe.  After Enriquez left, Castro called for help and went out on the balcony, where the officers found him.  Flores, who spoke fluent Spanish, later assisted Detective Craig Ross, common spelling, in obtaining a further statement from Castro.
>
> Castro told Ross essentially the same facts he told Flores.  He stated that [petitioner] carried a .22 caliber rifle into the apartment and struck Garcia with it.  He did not state that [petitioner] was absent during the fight.  On March 6, 1990, Detective William Marquez, M-A-R-Q-U-E-Z, met with Castro, who provided substantially the same facts.  Castro told Marquez that [petitioner] brought the rifle and struck Garcia with the butt of the gun.  [Petitioner] told Mendez to pick up the gun when it dropped, referring to Jose Luis Mendez, and Jose Luis Mendez did so then shot Garcia.  Castro

  testified at trial that he went to visit Garcia, who lived with Jose Mendez. Mendez, Enriquez, and [petitioner], who were related to each other, were at the apartment. Castro claimed that after Enriquez began to fight with Castro, [petitioner] began to fight with Garcia, [petitioner] left. Enriquez struck Castro with a pipe and said they should kill Castro. Jose Mendez shot Garcia. Castro claimed he did not recall seeing [petitioner] with a rifle or seeing someone bring a rifle into the apartment. He assumed that the rifle was already present.

  At an April 1990 preliminary hearing, he had testified that [petitioner] had the gun when Castro first saw it, [petitioner] struck Garcia with the gun, then dropped it, and Jose Mendez picked it up and shot Garcia. At trial Castro acknowledged that his preliminary hearing testimony was true. Van Diaz, D-I-A-Z, a district attorney's investigator, spoke with Castro about his preliminary hearing testimony, and Castro indicated that his testimony was accurate. At trial Castro also claimed he could not remember if he told Marquez that [petitioner] struck Garcia with the rifle and that Jose Mendez and [petitioner] left the apartment quickly. He could also not remember if he told Ross that [petitioner] struck Garcia with the rifle and that [petitioner] dropped the gun. He also claimed not to remember telling Detective Mike Miranda, M-I-R-A-N-D-A, after his preliminary hearing testimony in April 1990, that he was concerned about what Mendez family members might do to him if he testified against [petitioner.] However, he testified that his statements to Ross that Enriquez, Joe Mendez, and [petitioner] entered the apartment without saying anything, with [petitioner] carrying a gun, and that [petitioner] began to fight wit Garcia were true. His statements to Flores that [petitioner] was carrying the rifle when he entered was also true. He further testified that his statement to Marquez that [petitioner] dropped the rifle and that Jose Mendez picked it up and shot Garcia was true, as well. He also acknowledged he had told Marquez that he called the police and went downstairs because he wanted to be sure the police and the ambulance could find Garcia.

(Transcript at 13-18.)

B. <u>Parole Suitability Hearing</u>

  On August 29, 2007, petitioner appeared with counsel before the Board for his second parole suitability hearing. The Board first reviewed petitioner's pre-commitment record and family life, noting that petitioner was born in Mexico, has seven siblings, and came to the United States from Mexico in 1981. (<u>Id.</u> at 19.) While petitioner denied having a drug or alcohol problem, he admitted that he began drinking alcohol when he was around 20 years old and would sometimes have between 6 and 12 beers at once. (<u>Id.</u>) Petitioner has an INS hold to return to Mexico whenever he is released. (<u>Id.</u> at 20-21.) Petitioner's immediate family all reside in the United States. (<u>Id.</u>) While incarcerated, petitioner had received no 115s and only one 128 in 1993 for destruction of

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability as Unnecessary
P:\PRO-SE\SJ.JW\HC.08\Mendez04685_denyHC-parole.wpd

3

state property. (Id. at 22.) Petitioner's main activity while in prison has been to focus on education and the documents showed that petitioner had progressed tremendously. (Id. at 22-23.) Petitioner also had been attending Alcoholics Anonymous consistently since 2003. (Id. at 23.) Petitioner's psychological evaluation concluded that he presented a low risk of future violence. (Id. at 32.) Petitioner disagreed, however, with the psychologist's assessment of a previously recorded incident of mental instability. (Id. at 29-32.) The Board heard several letters of support on petitioner's behalf, and petitioner discussed his parole plans as well. (Id. at 35-38.) The Board heard closing statements from counsel for petitioner in favor of parole. (Id. at 42-46.) The Board then took a recess before rendering its decision finding petitioner unsuitable for parole. (Id. at 48-53.)

## DISCUSSION

### A.   Standard of Review

Because this case involves a federal habeas corpus challenge to a state parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002). Under AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1).

Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under section 2254(d) is of the last state court opinion to reach the merits. Bains v. Cambra,

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability as Unnecessary
P:\PRO-SE\SJ.JW\HC.08\Mendez04685_denyHC-parole.wpd

4

204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of petitioner's claim is the opinion of the Santa Barbara Superior Court.

**B.     Analysis of Legal Claims**

Petitioner claims that (1) he was denied due process because the Board's decision finding him unsuitable for parole relied solely on the commitment offense and was not supported by "some evidence" that he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison and (2) the Board's decision violated his right to equal protection. Respondent argues that California inmates do not have a federally protected liberty interest in parole release.

      1.     Some Evidence

The Ninth Circuit has held that California prisoners have a constitutionally protected liberty interest in release on parole, and therefore they cannot be denied a parole date without adequate procedural protections necessary to satisfy due process. See Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007). The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). The "some evidence" standard identified in Hill is clearly established federal law in the parole context for AEDPA purposes. Sass, 461 F.3d at 1128-29. Additionally, the evidence underlying the board's decision must have some indicia of reliability. McQuillion, 306 F.3d at 904; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). Accordingly, if the Board's determination of parole suitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

Recently, the Ninth Circuit reheard en banc the panel decision in Hayward v.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability as Unnecessary
P:\PRO-SE\SJ.JW\HC.08\Mendez04685_denyHC-parole.wpd

5

Marshall, 512 F.3d 536 (9th Cir. 2007), reh'g en banc granted, 527 F.3d 797 (9th Cir. 2008), which presented a state prisoner's due process habeas challenge to the denial of parole. The panel had concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole and held that because the Governor's reversal of parole was not supported by some evidence, it resulted in a due process violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc decision in Hayward. Unless or until the en banc court rules otherwise, the holdings in Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003), Sass, and Irons are still the law in this circuit.

When assessing whether a state parole board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Irons, 505 F.3d at 850. Accordingly, in California, the court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision constituted an unreasonable application of the "some evidence" principle. Id. California law provides that a parole date is to be granted unless it is determined "that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . ." Cal. Penal Code § 3041(b). The California Code of Regulations sets out the factors showing suitability or unsuitability for parole that the Board is required to consider. See 15 Cal. Code Regs. tit. 15 § 2402(b). These include "[a]ll relevant, reliable information available," such as:

> . . . the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which

results in finding of unsuitability. Id.

Circumstances tending to show unsuitability for parole include the nature of the commitment offense and whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." Id. at § 2402(c). This includes consideration of whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id. Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail. Id.

Conversely, circumstances tending to support a finding of suitability for parole include: no juvenile record; a stable social history; signs of remorse; that the crime was committed as a result of significant stress in the prisoner's life; a lack of criminal history; a reduced possibility of recidivism due to the prisoner's present age; that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. See id. at § 2402(d).

In making its determination in this case, the Board analyzed numerous factors weighing for and against suitability for parole. The Board began by reviewing the commitment offense and determined that the offense was against multiple victims and was particularly cruel and callous with an inexplicable motive. (Tr. at 48-49.) The Board reviewed the factual scenario, reiterating that petitioner and his co-defendants entered into the victims' residence and attacked them while the victims were unarmed. (Id.) Although petitioner denied having an alcohol problem, the Board was concerned that he was in denial based upon his responses during the hearing as well as a previous

record of two alcohol-related offenses. (Id. at 49-50.) The Board commended petitioner on his remaining free of disciplinary reports and encouraged him to not only memorize the Twelve Steps of Alcoholics Anonymous but also to develop and understand the steps. (Id. at 50.) The Board also recommended more self-help groups, as well as therapy to address his anger and impulse control issues, although the Board questioned petitioner's motivation and receptiveness to therapy. (Id.) The Board concluded that the factors tending to show suitability were outweighed by factors showing unsuitability and denied parole.

The superior court rejected petitioner's habeas petition, finding that it failed to state a claim. (Resp. Ex. 2.) The court nevertheless reviewed the Board's decision and found that there was some evidence supporting the decision to find petitioner unsuitable for parole at this time. (Id. at 2.) Specifically, the court noted that the Board properly determined that petitioner's crime met the "some evidence" standard, and that petitioner's 2007 psychological report concluding that he was at a "low moderate" risk of violence was conditioned on continued abstinence from alcohol. (Id.) The court linked that report to the Board's assessment that petitioner has not progressed meaningfully as it relates to his rehabilitation. (Id.)

This court also concludes that the Board reasonably found that the circumstances of the offense was carried out in a dispassionate and callous manner and against multiple victims. The victims were unarmed and the motive for the attack was not readily apparent. These facts alone amount to "some evidence" that petitioner would present an unreasonable threat to the public if released, but there was additional evidence in the record supporting the Board's parole denial as well. The record of the 2007 parole hearing demonstrates at least "some evidence" that petitioner would pose a risk of harm to society if released and that parole should be denied. See Rosas, 428 F.3d at 1232–33 (facts of the offense and psychiatric reports about the would-be parolee sufficient to support denial).

The state court's rejection of petitioner's due process claim was neither contrary

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability as Unnecessary
P:\PRO-SE\SJ.JW\HC.08\Mendez04685_denyHC-parole.wpd

8

to nor an unreasonable application of the "some evidence" requirement of due process. Moreover, this was only petitioner's second parole hearing and at that time, petitioner had only served approximately fifteen years of his eighteen years to life sentence. Based on this record, petitioner cannot demonstrate a due process violation at this time. Cf. Irons v. Carey, 505 F.3d 846, 853-54 (9th Cir. 2007) (noting that Ninth Circuit has upheld denial of parole based solely on commitment offense and/or pre-commitment conduct where prisoners have not yet served minimum number of years required by their sentence); Biggs, 334 F.3d at 912 (same). Therefore, the state court's rejection of petitioner's due process claim was not contrary to or an unreasonable application of the "some evidence" standard.

### 2. Equal Protection

Petitioner also claims that the Board violated his equal protection rights under a "class of one" theory. He argues that he was treated differently from Mikael Schiold, a foreign national, who was transferred to the custody of the government of Sweden to serve a fixed term under a settlement agreement in a habeas action. Petitioner alleges that Schiold received a specific release date when his term was set without him first having been found suitable under § 3041(b). Petitioner also alleges that Schiold, the foreign national, "is being treated distinctly different than 'all' U.S. Citizens, and, foreign nationals that have not caused legal actions to enter into 'settlement agreements', in California serving a sentence of life with the possibility of parole." Petitioner further alleges he is being treated differently than the foreign national who settled his habeas action because he cannot be transferred to another country.

These allegations do not state a claim for relief for an equal protection violation. Petitioner has not alleged that all indeterminately sentenced foreign nationals are receiving fixed terms, but only that one inmate with an indeterminate sentence who filed a habeas action reached a settlement that allowed his transfer to his home country to serve a fixed term. The petition and exhibits thereto plainly show that petitioner is not similarly situated to the other inmate he claims has received more favorable treatment:

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability as Unnecessary
P:\PRO-SE\SJ.JW\HC.08\Mendez04685_denyHC-parole.wpd

9

1  the most obvious difference is that the other inmate had prevailed on his petition for writ
2  of habeas corpus in state superior court and the inmate was transferred to Sweden
3  pursuant to a settlement agreement as a compromise of that habeas action.  Casting the
4  argument as a "class of one" equal protection claim does not help petitioner because the
5  case he cited adheres to the requirement that the plaintiff be "intentionally treated
6  differently from others similarly situated and that there is no rational basis for the
7  difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).
8  The equal protection claim is dismissed.

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).  However, the Ninth Circuit has made clear that a state prisoner challenging the Board of Prison Terms' administrative decision to deny a request for parole need not obtain a certificate of appealability.  See Rosas, 428 F.3d at 1232.  Accordingly, any request for a COA is DENIED as unnecessary.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED on the merits and a COA is DENIED as unnecessary.

DATED:  March 25, 2010

JAMES WARE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

FIDEL MENDEZ,

        Petitioner,

  v.

BEN CURRY, Warden,

        Respondent.
                             /

Case Number: CV08-04685 JW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 3/26/2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Fidel Morales Mendez H-35192
CTF - Correctional Training Facility -Soledad
P. O. Box 689
Soledad, CA 93960

Dated: 3/26/2010

                              Richard W. Wieking, Clerk
                       /s/ By: Elizabeth Garcia, Deputy Clerk

Fidel Morales Mendez H-35192
CTF - Correctional Training Facility -Soledad
P. O. Box 689
Soledad, CA 93960


CV08-04685 JW